24-3331
*Allco Fin. Ltd. v. Roisman*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of March, two thousand twenty-six.

PRESENT:     Debra Ann Livingston,
                     *Chief Judge*,
             José A. Cabranes,
             Steven J. Menashi,
                     *Circuit Judges.*

_____

ALLCO FINANCE LIMITED, CHELSEA SOLAR
LLC, and APPLE HILL SOLAR LLC,

       *Plaintiffs-Appellants*,

       v.                                     No. 24-3331

ANTHONY ROISMAN, RILEY ALLEN, and
MARGARET CHENEY, in their official capacities
as commissioners of the VERMONT PUBLIC
UTILITY COMMISSION,

*Defendants-Appellees.*[*]

_____

*For Plaintiffs-Appellants*:          THOMAS MELONE, Allco Finance Limited, New Haven, CT.


*For Defendants-Appellees*:          DAVID GOLUBOCK, Assistant Attorney General, Office of the Vermont Attorney General, Montpelier, VT.

Appeal from a judgment of the United States District Court for the District of Vermont (Crawford, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs Allco Finance Limited, Chelsea Solar LLC, and Apple Hill Solar LLC ("Allco")[1] sued the commissioners of the Vermont Public Utility Commission alleging two violations of federal law. According to Allco, (1) Vermont's Standard Offer Program for utility contracts for certain qualifying energy facilities is preempted by both the Federal Power Act, 16 U.S.C. § 791a *et seq.* ("FPA"), and the Public Utility Regulatory Policies Act, 16 U.S.C. § 2601 *et seq.* ("PURPA"), and (2) Vermont committed a taking in violation of the Fifth Amendment when it adopted a statutory amendment rendering Allco's Chelsea Solar facility ineligible for the Standard Offer Program. The district court dismissed the complaint on the grounds that (1) Vermont's program is not preempted and (2) Vermont's regulations "do not reach the level of an

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

[1] We refer to the plaintiffs collectively as "Allco." Allco Finance Limited is the single member of Chelsea Solar LLC and Apple Hill Solar LLC. *See* J. App'x 17 (¶¶ 46-47).

unconstitutional taking." *Allco Fin. Ltd. v. Roisman*, No. 23-CV-691, 2024 WL 5276715, at \*14 (D. Vt. Nov. 19, 2024).

But Allco previously litigated the question of whether federal law preempts the Standard Offer Program before the Vermont Supreme Court. *See In re Investigation to Review Avoided Costs that Serve as Prices for Standard-Offer Program in 2020*, 215 Vt. 140, 142 (2021). Accordingly, we conclude that Allco's preemption claim is barred by collateral estoppel. We agree with the district court that Allco failed to state a takings claim. We assume the parties' familiarity with the facts, procedural history, and issues on appeal.

**I**

Allco has sought to develop two adjoining solar energy facilities in Bennington, Vermont, to take advantage of Vermont's Standard Offer Program for qualifying facilities. Initially, the Vermont Supreme Court held that Allco's proposed facilities would qualify for the Standard-Offer Program. *See In re Programmatic Changes to the Standard-Offer Program*, 196 Vt. 175, 182 (2014). The Vermont Legislature then amended the statutory definitions governing the program. *See* 2014 Vt. Acts & Resolves 276, 285, No. 99, § 3. In light of the new definitions, the Vermont Public Utility Commission ("PUC") declined Allco's request for the facilities to participate in the Standard Offer Program. Allco remained eligible for a different Vermont program for energy development, which is called Rule 4.100. *See* Vt. Admin. Code 18-1-10:4.100. According to Allco, however, the contracts offered pursuant to the Standard Offer Program are preferable to those in the Rule 4.100 Program because the longer term provides a more stable price that will facilitate greater investment.

To administer the Standard Offer Program, each year the PUC reviews the calculation of "avoided costs"—the figure that PURPA requires be the basis of its contracts. *See In re Investigation*, 215 Vt. at 146; 18 C.F.R. § 292.101(b)(6). Although the "PUC did not follow contested-case procedures under the Vermont Administrative Procedures Act"—because of an exemption under 30 V.S.A.

§ 8005a(f)—"Allco participated in the [PUC's] workshop." *In re Investigation*, 215 Vt. at 147. Allco argued that the Standard Offer Program's pricing mechanism "violates federal law," but the PUC rejected that argument based on precedent that "had previously addressed the standard-offer program's consistency with federal law." *Id.* at 148.

Allco appealed to the Vermont Supreme Court, arguing that the PUC violated the state law requiring that it confirm that "its pricing mechanism complied with federal law" because the scheme was inconsistent with PURPA. *Id*. The Vermont Supreme Court affirmed. It recognized that "the Vermont Legislature has expressly baked the federal compliance question into the state standard-offer price-setting process," which raised the question of whether the Standard Offer Program violates PURPA. *Id.* at 153. Allco argued that it did because "the state cannot regulate wholesale power purchase contracts … unless its regulation complies with PURPA" and the "standard-offer contract prices [are] below the [PURPA] avoided cost." *Id.* at 154. The PUC rejected that argument because the Rule 4.100 Program is available and complies with PURPA's pricing requirements, so the Standard Offer Program "is an allowable auxiliary program to PURPA." *Id*.

The Vermont Supreme Court agreed with the PUC. It held, based on precedent of the Federal Energy Regulatory Commission ("FERC"), that as long as facilities may participate in a PURPA-compliant program, a state "may have auxiliary programs to promote PURPA's goals with different pricing structures." *Id.* at 156. In multiple notices, the FERC has explained that programs such as the Standard Offer Program are permissible additional offerings provided the state also provides a PURPA-compliant option. *See Otter Creek Solar LLC*, 143 FERC ¶ 61282 (2013); *Winding Creek Solar LLC*, 2015 FERC ¶ 61103 (2015). The Vermont Supreme Court adopted that interpretation of PURPA. *See In re Investigation*, 215 Vt. at 158.

The Vermont Supreme Court further concluded that the Rule 4.100 Program complied with PURPA. Allco argued that the Rule 4.100 Program's contract term of seven years was too short to satisfy PURPA. The Vermont Supreme Court rejected that argument because "PURPA and its enabling regulations do not require contracts for a particular number of years" but allow a state to "place durational limits" on PURPA contracts. *Id.* at 160-61. The court rejected Allco's challenge to the Rule 4.100 Program price calculations because the FERC had determined that similar programs were consistent with PURPA. *See id.* at 161 (citing *Cal. Pub. Util. Comm'n*, 133 FERC ¶ 61059 (2010)).

Allco repeated these arguments in its complaint in the district court. It alleged that the Standard Offer Program and the Rule 4.100 Program were preempted by PURPA because (1) the Standard Offer Program uses pricing and facility limits that depart from PURPA, (2) Vermont cannot implement a non-PURPA-compliant program simply because it provides a separate PURPA-compliant option, and (3) Rule 4.100 does not comply with PURPA because its seven-year term is too short and the price calculations conflict with FERC regulations. *See* Memorandum in Opposition to Motion to Dismiss 19-25, *Allco Fin. Ltd. v. Roisman*, No. 23-CV-691 (D. Vt. June 30, 2024), ECF No. 21.

The district court rejected these arguments, holding that Rule 4.100 complies with PURPA and that Vermont may offer a non-compliant program as an additional option. *See Allco*, 2024 WL 5276715, at *8-14. The district court dismissed Allco's takings claim because Allco had not alleged a per se taking or a sufficient deprivation of its property value. *See id.* at *14. Allco timely appealed.

## II

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Slattery v. Hochul*, 61 F.4th 278, 285-86 (2d Cir. 2023) (quoting *Henry v. County of Nassau*, 6 F.4th 324, 328 (2d Cir. 2021)). "We are free to affirm on any ground that finds support in the record, even if it was not the ground upon

which the trial court relied." *Beijing Neu Cloud Oriental Sys. Tech. Co., Ltd. v. IBM*, 110 F.4th 106, 113 (2d Cir. 2024) (quoting *Headley v. Tilghman*, 53 F.3d 472, 476 (2d Cir. 1995)).

## A

We asked the parties to address whether Allco is "estopped from relitigating whether the Standard Offer Program is preempted on account of the Vermont Supreme Court's decision." Order, *Allco Fin. Ltd. v. Roisman*, No. 24-3331 (2d Cir. Sept. 8, 2025), ECF No. 44.1. Having received argument from the parties on this question, we conclude that Allco's suit is barred by collateral estoppel.

State judicial proceedings receive "the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State … from which they are taken." 28 U.S.C. § 1738. If a state proceeding comported with due process, "every federal court must afford the final judgment entered therein the same preclusive effect it would be given in the courts of that state." *E. Fork Funding LLC v. U.S. Bank*, 118 F.4th 488, 501 (2d Cir. 2024) (Menashi, J., concurring) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000)).

In Vermont, an appellate court will address the preclusive effect of a prior litigation "on its own" when necessary to adhere to "policies of avoiding unnecessary judicial waste and fostering reliance on judicial decisions by precluding relitigation" and in accordance with "the rule that judgments are entitled to be affirmed if any legal ground exists to do so." *Merrilees v. Treasurer*, 159 Vt. 623, 624 (1992) (citation omitted).[2] Given "the necessity to provide notice

---

[2] *See also Goldman v. Rio*, 788 F. App'x 82, 83 (2d Cir. 2019) (affirming the *sua sponte* dismissal of a complaint based on issue preclusion); *Emerald Pointe, LLC v. Taney County*, 78 F.4th 428, 432-33 (8th Cir. 2023) ("A court may dismiss a case based on *res judicata sua sponte* because such a 'result is fully consistent with the policies underlying *res judicata*: it is not based solely on the defendant's interest in avoiding the burdens of twice defending

to all parties regarding the issues on appeal," the appellate court will "independently raise and decide" the preclusion question after it has "requested that the parties brief that issue." *In re Joyce*, 208 Vt. 226, 238 (2018). We have done that here.

"Under Vermont law, a party is precluded from relitigating an issue if the following elements are met: '(1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.'" *Echeverria v. Town of Tunbridge*, 219 Vt. 585, 590 (2024) (quoting *Trepanier v. Getting Organized, Inc.*, 155 Vt. 259, 265 (1990)).

Allco argues that a non-adjudicative administrative proceeding lacks preclusive effect. *See* Allco Letter at 1, *Allco Fin. Ltd. v. Roisman*, No. 24-3331 (2d Cir. Sept. 15, 2025), ECF No. 46.1 (citing *State Corp. Comm'n v. Wichita Gas Co.*, 290 U.S. 561, 569 (1934); *FTC v. Texaco, Inc.*, 555 F.2d 862, 894 (D.C. Cir. 1977) (Leventhal, J., concurring)). That may be. But "[i]t is well established that *judicial affirmance* of an administrative determination is entitled to preclusive effect." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 480 n.21 (1982) (emphasis added). The Vermont courts apply issue preclusion to "interested persons" involved in challenging administrative determinations, *Scott v. City of Newport*, 177 Vt. 491, 494 (2004), and to utility rate cases, *see In re Tariff Filing of Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 26 (2001). So we apply it here.

The first element is met. Allco's subsidiaries were the petitioners in the Vermont proceedings and Vermont law allows preclusion against "nominally different" parties that are "really and substantially in interest the same." *Pomfret*

---

a suit, but is also based on the avoidance of unnecessary judicial waste.'") (quoting *Arizona v. California*, 530 U.S. 392, 412 (2000)).

*Farms Ltd. P'ship v. Pomfret Assocs.*, 174 Vt. 280, 286 (2002) (quoting *Cutler v. Jennings*, 99 Vt. 85, 90 (1925)).

The second, fourth, and fifth elements are also met. The Vermont Supreme Court affirmed the decision of the PUC with a final judgment on the merits. Allco had a full opportunity to argue that the Standard Offer Program and the Rule 4.100 Program violate federal law. Allco provided extensive legal argument on those issues.[3] Resolving these legal questions does not require the "presenting of evidence" or "discovery." Allco Letter, *supra*, at 4. Given the opportunity to litigate and the correspondence of the issues, applying preclusion would be fair.

Regarding the third element, we note that many of the arguments in this case are the same arguments that Allco made before the Vermont Supreme Court. *Compare* Brief of Appellants, *supra* note 3, at 11-23 (arguing that a state cannot offer an auxiliary non-complaint program), *with* Appellants' Br. 34-49 (same); *compare* Brief of Appellants, *supra* note 3, at 23-26 (arguing that "Rule 4.100 does not comply with 18 C.F.R. § 292.304(d)(2)(ii)" because the seven-year term is an "unlawful cap"), *with* Appellants' Br. 49-51 (same). In this appeal, Allco raises additional arguments about the purported conflict between PURPA and the Rule 4.100 pricing mechanism. *See* Appellants' Br. 52-65. But Allco could have raised those arguments before the Vermont Supreme Court; that proceeding focused on the compliance of Rule 4.100 with PURPA. *See In re Investigation*, 215 Vt. at 160-61; Reply Brief of Appellants, *supra* note 3, at 5-6. We conclude that the issues are the same.

Allco argues that the issues are different because "the issue in the VT Case was whether the PUC satisfied the requirements of [30 V.S.A.] § 8005a(f)(3) with

---

[3] *See* Brief of Appellants PLH LLC and Allco Renewable Energy Ltd., *In re Investigation to Review the Avoided Costs that Serve as Prices for the Standard-Offer Program in 2020*, No. 20-134 (Vt. June 18, 2020), 2020 WL 5491568; Reply Brief of Appellants PLH LLC and Allco Renewable Energy Ltd., *In re Investigation to Review the Avoided Costs that Serve as Prices for the Standard-Offer Program in 2020*, No. 20-134 (Vt. July 21, 2020), 2020 WL 5491566.

respect to its annual review of its pricing mechanism … *under Vermont state law*," but the Vermont "court did not stop there, it went on to delve into the federal compliance issue." Allco Letter, *supra*, at 3. That is not how Allco understood the issue when it appeared before the Vermont Supreme Court. Allco told the Vermont Supreme Court in a boldface headline that "The Merits of Whether The PUC's Market Based Mechanism Is Consistent With Federal Law Is Part Of Vermont's Statute." Reply Brief, *supra* note 3, at 8. It said that § 8005a(f)(1) "necessitates that the PUC and this Court in an appeal make a merits determination that the mechanism is consistent with federal law." *Id.* at 9. Allco even observed that "[i]t is true that Appellants also have the right to file an action in federal district court under PURPA," but the federal question was nevertheless presented in the state litigation because "30 V.S.A. § 8005a and section 210(g) of PURPA make[] the federal question one of state law and enforcement." *Id.*[4]

These issues were also necessarily decided. Allco argues that the questions of federal law were not necessarily decided. According to Allco, the Vermont Supreme Court decided that a remand to the agency was unnecessary because the agency had already analyzed the consistency of the program with federal law. If the Supreme Court had instead remanded, Allco argues, it would have discovered that the underlying administrative proceeding had "concluded, making the appeal

---

[4] We further note that the level of deference the Vermont Supreme Court accorded to decisions of the FERC does not affect the preclusion analysis. *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 504 (1982) (Blackmun, J., dissenting) (noting that a state-court judgment had preclusive effect even though "the deferential standard of review in state court" contrasted with the availability "in federal court [of] a *de novo* hearing"); *Swapshire v. Baer*, 865 F.2d 948, 950 (8th Cir. 1989) (rejecting "the view that because the state court's standard of review of administrative action is limited … the state court's judgment is not entitled to preclusive effect" because "[t]here is no requirement that judicial review must proceed *de novo* in order for the state-court judgment to be entitled to preclusive effect in federal court under § 1738").

moot" and providing an "alternative reason[]" for the judgment. *Allco Letter, supra*, at 3. We are not persuaded.

The Vermont Supreme Court explained that it did not need to decide whether the PUC was required "to determine that its pricing mechanism complies with federal law before it issues each annual RFP" because "the remedy for its failure to do so would be to remand with instructions to make the required determination." *In re Investigation*, 215 Vt. at 151. But "in its subsequent denial of Allco's motion to stay the RFP, the PUC set forth the legal analysis supporting its conclusion that its market-based pricing mechanism is consistent with federal law." *Id.* So even "assuming without deciding that [the PUC] was required to do so," the Vermont Supreme Court could "conclude that the PUC ultimately satisfied any requirement that it determine that its market-based pricing mechanism complies with federal law before proceeding with its 2020 RFP." *Id.* at 152. That was a reasonable way of deciding the question before it. Even if following a different course of action would have produced an alternative ground for its decision, we apply preclusion principles to the prior litigation that actually occurred. In any event, the record does not indicate that Allco's challenge to the Standard Offer Program and the Rule 4.100 Program as incompatible with PURPA was moot. Indeed, Allco still claims to be aggrieved by those programs years later in a subsequent litigation.

**B**

The litigation in state court did not address whether Allco suffered a taking in violation of the Fifth Amendment. So we proceed to consider that claim. We agree with the district court that Allco failed to state a claim for a violation of the Takings Clause. Vermont has not physically taken Allco's land, nor can it be said that its regulatory activity "completely deprives an owner of *all* economically beneficial use of [its] property." *Principle Homecare, LLC v. McDonald*, 158 F.4th 326, 331 (2d Cir. 2025) (alteration omitted) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005)). Because there is no *per se* taking, we evaluate Allco's claim

10

"under the multi-factor test set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978)." *Id.*

"*Penn Central* instructs courts to engage in a flexible, 'ad hoc, factual inquiry' focused on 'several factors that have particular significance'" including "(1) 'the economic impact of the regulation on the claimant,' (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations,' and (3) 'the character of the governmental action.'" *Comm. Hous. Improvement Program v. City of New York*, 59 F.4th 540, 553 (2d Cir. 2023) (quoting *Penn Central*, 438 U.S. at 124). Allco argues that preventing it from participating in the Standard Offer Program "saps too much of the property's value." Appellants' Br. 68. But Allco does not quantify that loss. Allco may still participate in the Rule 4.100 Program or sell the land for a different purpose, and our case law has "reject[ed] takings claims under the *Penn Central* framework despite diminutions in value of 75 to 90 percent." *74 Pinehurst LLC v. New York*, 59 F.4th 557, 566 (2d Cir. 2023).

Allco cannot establish that the regulatory change upset its reasonable investment-backed expectations. The history of Allco's planned development shows that the PUC and the state courts would be expected to alter the way in which the Standard Offer Program would be administered. *Cf. id.* at 567 (explaining that "any investor could reasonably expect limits on the use of rental properties" and that "for decades New York landlords have taken a calculated risk when they entered the rental market").

The implementation of PURPA in Vermont reflects "a legislative desire to serve 'important public interests'" rather than "a regulation [that] was 'enacted solely for the benefit of private parties.'" *Id.* at 568 (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 486-86 (1987)). "Under 30 V.S.A. § 248(b)(5), the PUC may not issue a [certificate of public good] without first finding that the proposed facility will 'not have an undue adverse effect on aesthetics, historic sites, air and water purity, the natural environment, the use of natural resources, and the public health and safety.' That review must consider factors set forth at 10

V.S.A. § 6086(a), which include 'natural beauty of the area, aesthetics, historic sites, or rare and irreplaceable natural areas.'" *PLH Vineyard Sky LLC v. Vermont Pub. Util. Comm'n*, No. 23-CV-154, 2024 WL 1072017, at \*10 (D. Vt. Mar. 12, 2024).

## C

Allco argues that the district court erred by dismissing its complaint with prejudice without an opportunity to amend. But "Allco never sought that opportunity." *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 108 (2d Cir. 2017). "While leave to amend under the Federal Rules of Civil Procedure is 'freely granted,' no court can be said to have erred in failing to grant a request that was not made." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (citation omitted) (quoting Fed. R. Civ. P. 15(a)).

\*     \*     \*

We have considered Allco's remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court